IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL THOMAS | : CIVIL ACTION |
| | : |
| v. | : NO. 23-4062 |
| | : |
| UNITED STATES OF AMERICA | : |

## MEMORANDUM

**SCHMEHL, J.   /s/ JLS**                                                                                               **DECEMBER 16, 2024**

      Plaintiff brought this action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., claiming that he was injured when a postal truck being driven by an employee of the United States Postal Service ("Postal Service") suddenly pulled out into an intersection in front of a pick-up truck being driven by Plaintiff causing the pick-up truck to strike the postal truck. With the consent of the parties, the trial was bifurcated and the issue of liability was tried to the Court sitting without a jury.[1] After carefully considering the testimony and evidence, the Court finds in favor of the Plaintiff and against the Defendant on liability.

      The accident occurred on the morning of March 21, 2018, at the intersection of Chestnut Street and North Second Street in Columbia, Lancaster County, Pennsylvania. Plaintiff was operating a 2014 Ford F150, four-door, four-wheel drive pick-up truck westbound on Chestnut Street and Postal Service employee Tonya Morgan ("Morgan") was operating the Defendant's 1992, rear-wheel drive, Grumman LLV ("LLV")

---

[1] Under 28 U.S.C. § 2402, a plaintiff proceeding under the FTCA is not entitled to a jury trial. *See O'Neill v. United States,* 411 F.2d 139, 141 (3d Cir.1969).

1

(long-lasting vehicle) southbound on North Second Street. The driver's compartment and controls were located on the right side of the LLV.

Plaintiff testified that it was snowing on the morning of March 21, 2018, when he was leaving his home in Wrightsville to attend a doctor's appointment approximately four miles away in Columbia. He testified that despite the presence of some snow on the roads, he believed that it was safe to drive. Plaintiff testified that he was familiar with the pick-up truck's operation, had it regularly serviced, had not make any modifications to the pick-up truck and that the tires were in very good condition. Because it was snowing, Plaintiff placed the pick-up truck into four-wheel drive as he left his home to attend the doctor's appointment.

According to Plaintiff's testimony, he had previously driven his pick-up truck in snowy weather. He had not experienced any problems with the pick-up truck on the morning of March 21, 2018. He testified that he was not in a rush to return home at the time of the accident.

Plaintiff testified that he was familiar with the intersection where the accident occurred, having in fact passed through that same intersection on his way to his doctor's appointment. Plaintiff testified that at the time of the accident, it was snowing and the roads were snow covered with a "couple of inches." Plaintiff testified that he was driving under the posted speed limit of 30 miles per hour due to the snowy conditions and had turned on the pick-up truck's windshield wipers and headlights. He testified that he was not using a cell phone and that he was not eating, smoking, drinking or was otherwise distracted at the time of the accident.

Plaintiff testified that he had the right of way on Chestnut Street as there was a stop sign on North Second Street and none on Chestnut Street. See Plaintiff's Exhibits 1g,1k. He testified that the LLV "just came right out in front of me" into his lane of travel with no warning. He slammed on the brakes but ended up "T-boning" the LLV on the left side which caused his pick-up truck to spin and slide and end up in a perpendicular position on Chestnut Street. See Plaintiff's Exhibits 1a,1c,1g,1i. The pick-up truck's airbags did not deploy. Plaintiff testified that he got out of his vehicle and observed totes piled up on a shelf inside the LLV on the left side near the point of impact. Plaintiff testified that he was able to drive the pick-up truck to his home following the accident. The LLV had to be towed from the scene.

At trial, a witness for Plaintiff, Michelle Tyson, testified that she was operating her vehicle on Chestnut Street approximately two to three car lengths behind the Plaintiff's blue pick-up truck. There were no vehicles in between Plaintiff's vehicle and Tyson's vehicle. She testified that she observed the postal truck go through a stop sign without stopping and crash into the passenger side of Plaintiff's pick-up truck. She did not observe the postal truck inching out from the stop sign. She testified that Plaintiff did not have a stop sign and had the right of way. She estimated that Plaintiff was traveling under the posted speed limit of 30 miles per hour. She testified that the postal truck pulled directly into Plaintiff's lane of travel and that she did not believe the postal truck had ever stopped. She testified that nothing obstructed her view of the accident. She admitted that in her deposition she testified that she saw the postal truck "slide through" the intersection and that the postal truck "gradually" kept on going into the intersection where it "clipped" the front of Plaintiff's pick-up truck causing the pick-up truck to spin around.

Morgan testified that she began working for the Postal Service on November 25, 2017. Before the Postal Service hired Morgan, it looked at her driving history. She testified that she had never been involved in a prior motor vehicle accident. She testified that she had received actual training experience in operating an LLV and had received videos and instructions for driving one in snowy conditions. Her duties included delivering totes and relay boxes and assisting other carriers with their routes. On the day of the accident, she was performing her assigned route which included the intersection at Chestnut Street and North Second Street.  Morgan testified that there is a "big building" on the left side of the corner of the intersection when approaching the intersection southbound on North Second Street. See Plaintiff's Exhibit 1j. She testified that she had driven the LLV in snowy conditions approximately five times before the date of the accident.

On the day of the accident, the LLV was equipped with chains on its rear tires which, according to Morgan, forces the operator of the LLV to drive no faster than 10 miles per hour because the chains do not grip the road. Morgan testified that she successfully navigated that same intersection earlier that day.

Morgan acknowledged that she testified at her deposition that she is 5 feet and 1 inch tall and that she typically had to move the driver's seat in the LLV all the way forward so that her feet would be able to reach the pedals. She also testified that she is farsighted and was wearing her glasses at the time of the accident. She testified that she was aware of the stop sign on North Second Street at the intersection of Chestnut Street and North Second Avenue. She admitted that Plaintiff had the right of way on Chestnut Street and that she had a duty to ensure that no traffic was coming in either direction

before she proceeded to turn left onto Chestnut Street. Morgan testified that she came to a complete stop at the intersection, then inched up past the "big building" until the LLV's front side mirrors were even with the stop sign on North Second Street. There was no accumulation of snow or ice on the LLV's windshield. She looked through all seven of the LLV's mirrors. She then looked to her left, looked to her right, and to her left again. When she looked left, she observed the traffic signal at the intersection of Chestnut Street and North Third Street one block away. When she looked right, she observed about 10 vehicles on the Columbia bridge approaching the intersection but concluded that these vehicles were far enough away to not influence her decision to proceed. After observing no vehicles travelling west on Chestnut Street, she pulled out slowly and attempted to make a left turn onto Chestnut Street when the LLV was struck by Plaintiff's pick-up truck. She testified that she did not see the pick-up truck until impact. She admitted that she impacted Plaintiff's pick-up truck in the middle of Plaintiff's lane of travel and that she had proceeded into the intersection without clearance.

Morgan testified that there is a tray to the left side of the driver's compartment on an LLV. She testified that this type of tray can hold up to four totes or relay boxes when they are placed on the tray in a flat position. She testified that at the time of the accident she could see over the four totes on the tray in her LLV and that the flat placement of the totes on the tray met with Postal Service regulations. She testified that as a result of the impact of the accident, the tray had been pushed slightly upward, lifting the totes up at an angle. See Plaintiff's Exhibit 1b.

Morgan testified that she was familiar with the Postal Employees Guide to Safety, specifically the section that instructed that a postal employee "must obey all state

**5**

and local traffic laws when driving any Postal Service vehicle" and that a "postal employee will receive no special privileges or rights as a Postal Service driver." Plaintiff's Exhibit 34, p. 1952. She testified that she was also familiar with the section that states, "Make sure that any mail you load into the vehicle will pose no hazard to the operator when the vehicle is started, stopped, turned, or otherwise operated on a mail delivery route. Do not place large parcels, bulky items, or bundles of mail on the tray or ledge to the extent that they can obscure your vision or break the windshield during a sudden stop." *Id.* at pp. 1958-1959.

Morgan testified that she did not receive a traffic citation from the police and was not disciplined by the Postal Service. Pursuant to the policy of the Postal Service, she did have to retake her postal driving exam and written exam regardless of fault. She testified that she passed both tests.

Defendant also called Charles Funk, Ph.D., P.E. ("Funk"), a mechanical engineer, as an expert in vehicular accident reconstruction. Upon conclusion of defense counsel's questioning of Funk concerning his background and credentials, Plaintiff's counsel did not object to Funk testifying as an expert witness on vehicular accident reconstruction. Funk submitted a 105-page Collision Reconstruction Engineering Report. See Plaintiff's Exhibit 35.

Funk testified that he performed a simulation of the accident scene. The simulation included an inspection of Plaintiff's pick-up truck (including a download from data from the crash that was stored in the Event Data Recorder of Plaintiff's vehicle) and of an exemplar of an LLV that was involved in the accident. The inspection and scanning of Plaintiff's pick-up truck did not occur until September of 2024, well after the pick-up

truck was repaired. Morgan was not present at the time of the inspection of the exemplar LLV. Nor did the exemplar LLV have any relay boxes resting on the tray to the left of the driver's compartment at the time of inspection. See Plaintiff's Exhibit 35 at pp. 59-64.

According to Funk, the simulation also included noting the curb weight of both vehicles, noting the topography of Chestnut and North Second Streets, a site inspection of the accident scene, and a determination of the range of speeds of each vehicle based on the final rest positions of the vehicles after the accident. The results of the vehicle inspections, the vehicle specifications and information from Google Earth were also put into the simulation.

Funk testified that the results of the simulation revealed that Plaintiff's pick-up truck was traveling at a speed of 22-23 miles per hour at the time of impact and the LLV was traveling at a speed of 7-8 miles per hour at the time of impact. Funk testified that, given the situational and environmental factors at the time of the accident, the perception and reaction time range for a driver in similar conditions would have been between 1.1 and 1.4 seconds. The data indicated that Plaintiff's first application of his brakes occurred 1.2 seconds before impact. Funk opined that the total time Plaintiff had to perceive, react and slow his vehicle to reach the impact speed of 22-23 miles per hour was 2.3 to 2.6 seconds. Based on this data, Funk concluded that the LLV had to have first stopped and then accelerated at the intersection of Chestnut Street and North Second Avenue. According to Funk, if the LLV had not stopped at the intersection, the LLV would have cleared the intersection before being struck by Plaintiff's pick-up truck as there would not have been sufficient time for Plaintiff to perceive, react and brake in the manner he did. He testified that because there was snow on Chestnut Street and

Chestnut Street has a slight decline as it approaches North Second Street, it would have been easier for Plaintiff to have stopped and avoided a spin if he had been driving slower. Funk admitted that his report did not make a single reference to relay boxes on the tray to the left of the driver's compartment.

Funk opined that, based on a reasonable degree of engineering certainty, there is no evidence that there was a hazard present when the LLV pulled out or that the LLV pulled out in front of Plaintiff's pick-up truck. He further opined that there is no evidence that Plaintiff did anything wrong. He admitted that Morgan had a duty to stop at the stop sign and therefore to look left and right before proceeding into the intersection.

The Court makes the following:

**CONCLUSIONS OF LAW**

1. In assessing a claim under the FTCA, the Court applies the law of the state in which the act or omission occurred. *See Gould Elecs. Inc. v. United States,* 220 F.3d 169, 179 (3d Cir.2000).

2. Under Pennsylvania law, "[t]he mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Estate of Swift by Swift v. Northeastern Hosp.*, 456 Pa.Super. 330, 690 A.2d 719, 722 (1997).

3. In general, under Pennsylvania law, negligence is defined as the "absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458, 461 (1998). "The plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of

care expected under the circumstances, and that this deviation proximately caused actual harm. *Id.*

4. Under Pennsylvania law, a plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Id.*

5. Under Pennsylvania law, "[t]he nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff[']s injury." *Id.*

6. In this case, the standard for determining whether Defendant has complied with the common law duty to exercise ordinary care is found in the following statute:

> **(b) Duties at stop signs.--**Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering. If, after stopping at a crosswalk or clearly marked stop line, a driver does not have a clear view of approaching traffic, the driver shall after yielding the right-of-way to any pedestrian in the crosswalk slowly pull forward from the stopped position to a point where the driver has a clear view of approaching traffic. **The driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.**

75 Pa. C.S. § 3323(b) (emphasis added.)

7. Under this provision, Morgan owed Plaintiff a duty to yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.

8. Morgan breached that duty when she pulled into the intersection of Chestnut Street and North Second Avenue from North Second Avenue without yielding the right-of-way to Plaintiff's pick-up truck approaching the intersection on Chestnut Street so closely as to constitute a hazard and then entered the intersection when it was unsafe to do so.

9. Even if the Court were to credit the testimony of Morgan and Funk that Morgan did properly stop at the intersection of Chestnut Street and North Second Street and inch forward, she still had a duty not to pull into the intersection without first affirming proper clearance.

10. Morgan's claim that she looked left, right, left before entering the intersection but did not see the Plaintiff's pick-up truck does not fulfill her duty. "[Her duty was not fulfilled when [s]he proceeded when [s]he could not see nor when [s]he proceeded in the face of danger that was present even though [s]he says that [s]he did not see it. A [person] may not say [s]he looked and did not see when the danger is apparent." *MacDougall v. Chalmers,* 192 Pa. Super 401, 162 A. 2d 51 (1960); see also *Katz v. Montague*, 380 Pa. 273, 110 A.2d 178 (1955); *Sargeant v. Ayers,* 358 Pa. 393, 57 A.2d 881.

11. Given Morgan's stature of 5-foot, 1 inch, the placement of the relay boxes on the tray to the left of her driver's seat played a role in impeding her view of the approaching Plaintiff's pick-up truck on Chestnut Street.

12. There is a causal connection between Morgan's action and the accident/injury.

13. Actual damages resulted in an amount to be determined after the damages portion of the trial is completed.

14. The Comparative Negligence Statute, 42 Pa.C.S.A. § 7102, reads in pertinent part as follows:

> (a) General Rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff ... where such negligence was not greater than the causal negligence of the defendant ... against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A.§ 7102.

15. Despite the snowy conditions, the Plaintiff did not have a duty to anticipate the LLV pulling out in front of him at the intersection of Chestnut Street and North Second Avenue.

16. Defendant claims that Plaintiff breached a duty recognized by 72 Pa. C.S.A. §3361. That statute provides:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing

>an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

72 Pa. C.S.A.§ 3361.

17. Based on the evidence at trial, the Court finds that Plaintiff was not driving a vehicle at a speed greater than is reasonable and prudent despite the snowy conditions.

18. Based on the evidence, the Court finds that Plaintiff was not driving at a speed greater than would permit Plaintiff to bring his pick-up truck within the assured clear distance ahead as there was no assured clear distance within which Plaintiff could have come to a stop. This is because Morgan, without warning, pulled out from North Second Street directly in front of Plaintiff's vehicle which was traveling at a reasonable speed of 22-23 miles per hour in an easterly direction on Chestnut Street.

19. The percentage of negligence attributable to Defendant is 100%.

20. The percentage of negligence attributable to Plaintiff is 0%.

21. Judgment on liability is entered in favor of Plaintiff and against the Defendant.